UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCOTTSDALE INSURANCE COMPANY, )
                              )
            Plaintiff,        )        CIVIL ACTION NO.
                              )        13-12824-DPW
v.                            )
                              )
UNITED RENTALS                )
(NORTH AMERICA), INC.,        )
                              )
            Defendant.        )

MEMORANDUM AND ORDER
December 23, 2015


     This is an insurance coverage declaratory action arising

from personal injury litigation.  Before me are cross motions

for summary judgment on the question whether plaintiff

Scottsdale Insurance Company ("Scottsdale") must provide

defendant United Rentals (North America), Inc. ("United

Rentals") with coverage as an additional insured on the policy

at issue.

## I.   FACTUAL BACKGROUND

     In a contract dated June 22, 2007, Gomes Services, Inc.

("Gomes") rented an electric boom lift from United Rentals.

Gomes used that lift at a trade show held at the Rhode Island

Convention Center, where on June 26, 2007 an accident occurred.

Guy Ayotte, the plaintiff in the underlying action, was struck

and injured by the lift, which was then being operated by Gomes

1

employee Mario Perez.  At that time, Gomes was insured by
Scottsdale.  United Rentals had its own insurance policies, two
of which are at issue in this litigation and now asserts that it
was an additional insured on the Scottsdale policy as well.  The
relevant features of these contracts and policies will be
described as they arise in the analysis of the legal questions
presented.

After the accident, Ayotte and his wife filed suit in Rhode
Island state court against United Rentals, Gomes, and others.[1]
*Ayotte ex. rel. Ayotte* v. *Perez*, C.A. No. 10-2164 (R.I. Super.
Ct., amended complaint filed Mar. 11, 2011).  Three counts in
the amended complaint assert causes of action against United
Rentals and are relevant here: Negligent Operation and Ownership
Liability (Count I); Negligent Maintenance of a Dangerous
Instrumentality (Count V), and Negligent Hiring of a Dangerous
Instrumentality (Count VI).  At the heart of the claims against
United Rentals is the allegation that the lift should have been
properly equipped with an alarm which warned bystanders of the
lift's approach, but that the lift emitted no audible sounds at
the time.

---

[1] Gomes changed its name to Fidelis Facility Service Group, Inc.,
and many documents refer to it as Fidelis.  For the sake of
clarity and consistency, this opinion will refer to the firm
throughout as Gomes.

On August 24, 2011, United Rentals requested that
Scottsdale defend and indemnify it against the claims raised in
the state litigation, based on its status as an additional
insured.  Although there was significant correspondence on the
matter, both between Scottsdale and United Rentals and
internally within Scottsdale — including a September 25, 2012
letter from Scottsdale to United Rentals that could be
understood as offering United Rentals a defense — Scottsdale has
at no point paid for United Rentals' defense in the underlying
suit.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment
is appropriate where there "is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c).  Cross-motions for
summary judgment do not alter this standard, but rather require
a determination of whether either party can show an entitlement
to judgment as a matter of law based on the undisputed facts.
*Adria Int'l Grp., Inc*. v. *Ferre Dev., Inc*., 241 F.3d 103, 107
(1st Cir. 2001).  The interpretation of an insurance contract is
a question of law.  *Cody* v. *Connecticut Gen. Life Ins. Co*., 387
439 N.E.2d 234, 237 (Mass. 1982).

## III. CHOICE OF LAW

The threshold question in this case is what law is to be

applied.  The accident and litigation occurred in Rhode Island,
but Gomes is located in Massachusetts and its insurance contract
was negotiated there.  A federal court sitting in diversity
applies the choice of law rules of the forum state. *Klaxon Co.*
v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In
determining what state's law applies to a particular matter,
Massachusetts uses a "functional" approach that is informed by
the Restatement (Second) of Conflict of Laws.  *Taylor* v. *E.
Connection Operating, Inc*., 988 N.E.2d 408, 411 (Mass. 2013),
*citing Bushkin Assocs., Inc*. v. *Raytheon Co.*, 473 N.E.2d 662
(Mass. 1985).  The first step in this analysis is to determine
whether there is an actual conflict between the laws of the
states involved.  *Cohen* v. *McDonnell Douglas Corp.*, 450 N.E.2d
581, 584 n. 7 (Mass. 1983).  Where both parties agree on the
proper substantive law to be applied, there is generally no need
to engage in further choice-of-law analysis.  *See, e.g.,
Williams* v. *Astra USA, Inc.*, 68 F. Supp. 2d 29, 36 (D. Mass.
1999) ("neither party has raised the substantive law of any
jurisdiction other than Massachusetts, and for that reason this
Court does not opine on the law of Michigan").

Here, both parties agree that if a choice-of-laws analysis
were to be undertaken, Massachusetts would provide the
substantive law to be applied in this action, although they
disagree as to why.  Moreover, the parties acknowledged during

the hearing in this matter that as concerns an insurer's duty to
defend – the core issue for this summary judgment motion – Rhode
Island and Massachusetts employ substantially the same test,
which compares the pleadings in the underlying suit with the
insurance policy.  *Compare Derderian* v. *Essex Ins. Co.*, 44 A.3d
122, 127 (R.I. 2012) ("if the pleadings recite facts bringing
the injury complained of within the coverage of the insurance
policy, the insurer must defend irrespective of the insured's
ultimate liability to the plaintiff") *with Sterilite Corp.* v.
*Cont'l Cas. Co.*, 458 N.E.2d 338, 340 (Mass. App. Ct. 1983) ("if
the allegations of the complaint are 'reasonably susceptible' of
an interpretation that they state or adumbrate a claim covered
by the policy terms, the insurer must undertake the defense").
*See also Mount Vernon Fire Ins. Co.* v. *Stagebands, Inc.,* 636 F.
Supp. 2d 143, 147 (D.R.I. 2009) (applying Rhode Island law and
citing the Massachusetts *Sterilite* case).  While the
Massachusetts standard perhaps allows for a looser fit between
pleadings and policies, the difference is slight enough in the
absence of disagreement between the parties, that further
analysis of choice of law is unwarranted.  Massachusetts law
will govern this summary judgment motion.  Apart from this
default approach, it also is my own tentative independent view
on the merits that Massachusetts law should apply.  However, if
an issue is raised on which a material conflict exists between

Massachusetts and Rhode Island law, the parties may raise
additional choice-of-law concerns at that point in the
litigation.

### IV.   ANALYSIS

#### A.   *Indemnification*

Both Scottsdale and United Rentals seek declarations
concerning Scottsdale's duty to defend and indemnify United
Rentals.  A declaration regarding indemnification, however, is
untimely and must wait until the underlying action has been
resolved.  Whereas an insurer's duty to defend is "measured by
the allegations of the underlying complaint," the duty to
indemnify is "determined by the facts, which are usually
established at trial." *Travelers Ins. Co.* v. *Waltham Indus.
Labs. Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989), citing *Newell-
Blais Post No. 443* v. *Shelby Mut. Ins.*, 487 N.E.2d 1371, 1374
(Mass. 1986)).

Accordingly, a declaratory judgment is not yet ripe for
consideration regarding the duty to indemnify where, as here,
the underlying action has not determined liability or
adjudicated factual disputes.  Currently, there is no trial date
in the *Ayotte* suit.  "[A]ny determination as to the obligation
of the insurer to indemnify its insured would now be premature
and must await the resolution of the underlying claim." *Spoor-
Lasher Company, Inc.* v. *Aetna Casualty and Surety Co.*, 352

N.E.2d 139 (N.Y. 1976) (relied upon in *Sterilite Corporation* v. *Continental Casualty Company*, 458 N.E.2d at 341); see also *John Beaudette, Inc*. *v. Sentry Ins. A Mut. Co*., 94 F.Supp.2d 77, 103 (D. Mass. 1999).  For that reason, I will dismiss the claims seeking declaratory judgment regarding indemnification without prejudice to the filing of a new action should subsequent developments justify it.  Many of parties' arguments about the scope of coverage are immaterial in determining Scottsdale's duty to defend and must wait until the state litigation is resolved and questions of indemnification are fully framed and timely.

**B.**   *Duty to Defend*

<u>1</u>.   <u>Legal Standards</u>

Under Massachusetts law, an insurer's duty to defend is triggered when the allegations of the complaint are "reasonably susceptible" of an interpretation that "roughly sketches a claim covered by the policy terms." *Billings* v. *Commerce Ins. Co*., 936 N.E.2d 408, 414 (Mass. 2010).  This duty extends broadly, and the insured party bears only the burden of showing a "possibility" that the liability is covered.  *Herbert A. Sullivan, Inc*. v. *Utica Mut. Ins. Co*., 788 N.E.2d 522, 531 (Mass. 2003).  In contrast, the insurer is excused from the duty to defend when "the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose." *Id.* In

comparing the allegations to the policy's coverage, the court must look beyond the causes of action pled in the underlying complaint and to the facts and injuries alleged. *Global NAPs, Inc*. v. *Fed. Ins. Co*., 336 F.3d 59, 62 (1st Cir. 2003).

Where an insured is covered as an additional insured, the complaint is properly matched to the additional insured provision to determine the potential for coverage.  *See Great N. Ins. Co*. v. *Paino Associates*, 369 F. Supp. 2d 177, 186 (D. Mass. 2005).  Insurance policies, like all contracts, "are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." *Cody*, 439 N.E.2d at 237.

The burdens of persuasion begin with the obligation of the insured party to prove coverage and then may shift to the insurer to prove that an exclusion applies. *Manganella* v. *Evanston Ins. Co*., 746 F. Supp. 2d 338, 345 (D. Mass. 2010) *aff'd*, 700 F.3d 585 (1st Cir. 2012).  Once the insured party's ultimate burden regarding coverage is satisfied with regard to at least one claim against the insured, the insurer has a duty to defend generally.  *Dilbert* v. *Hanover Ins. Co*., 825 N.E.2d 1071, 1075 (Mass. App. Ct. 2005).  Taken together, these legal propositions mean that if United Rentals shows that the allegations against it could give rise to a covered claim and if Scottsdale cannot show that such a claim would be expressly

excluded, then Scottsdale owes United Rentals a full defense in the underlying suit.

### 2.   The Scottsdale Policy

The Gomes insurance policy issued by Scottsdale provides for the inclusion of additional insured parties.  The blanket additional insured endorsement in that policy states:

> SECTION II—WHO IS AN INSURED is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract, agreement or permit which must be:
>
> a.   Currently in effect or becoming effective during the term of the policy; and
> b.   Executed prior to the "bodily injury," "property damage," or "personal and advertising injury."
>
> The insurance provided to this additional insured is limited as follows:
>
> 1.   That person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>   a.`  Your acts or omissions; or
>
>   b.   The acts or omissions of those acting on your behalf.

Thus, United Rentals was an additional insured under this provision if Gomes and United Rentals had executed a written contract requiring Gomes to add United Rentals to the policy before the accident and if the liability in question was for

9

injuries caused by the acts of Gomes.  Scottsdale contests both

prongs of the additional insured inquiry.

### 3.   The Gomes Contract Requires United Rentals to be Added as an Additional Insured

It must first be determined whether Gomes and United

Rentals had executed a written contract that required Gomes to

add United Rentals to its insurance policy.[2]  The relevant

portion of their contract states:

10.  CUSTOMER'S INSURANCE COVERAGE.

Customer agrees to maintain and carry, at its sole
cost, adequate liability, physical damage, public
liability, property damage and casualty insurance for
the full replacement cost of the Equipment, including,
but not limited to all risks of loss or damage covered
by the standard extended coverage endorsement, to
cover any damage or liability arising from the
handling, transportation, maintenance, operation,
possession or use of the Equipment during the entire
Rental Period. When requested, Customer shall supply
to United proof of such insurance by Certificate of
Insurance clearly setting forth the coverage for the
Equipment and naming United as loss payee and
additional insured; such insurance and evidence
thereof to be in amounts and form satisfactory to
United.  [Doc. No. 49 ¶ 8].

This provision, while clumsily drafted, unambiguously shows

that Gomes had a contractual obligation to name United Rentals

as an additional insured.  Neither sentence, on its own, states

explicitly that United Rentals was to be an additional insured,

but taken together, that is their clear effect.  By referring to

---

[2] It is not disputed that the relevant contract was "[e]xecuted
prior to" the injury at issue in the *Ayotte* case.

"such insurance" in the second sentence, the contract refers to
the insurance that Gomes agreed to secure in the first sentence.
By requiring Gomes to provide, upon request, proof that "such"
insurance – again, the same insurance in both sentences – names
United as additional insured, the second sentence assumes that
United is indeed obligated to be an additional insured.  While
that assumption is not explicitly stated in the first sentence,
it is the only meaning that can sensibly be derived from the
language of the contract.

Scottsdale's alternative reading of the second sentence –
that a request was necessary before Gomes was obligated to name
United Rentals as additional insured – does not fit the language
of the contract.  After a request, the customer is obligated to
"supply . . . proof" of its insurance coverage, not to add or
amend its coverage.  That proof is contractually expected to
show that United Rentals was additional insured, not change the
parties' legal relations.  The only reading of this contract
that makes sense of the reference to United as an additional
insured is one in which the contract obligates Gomes to make
United Rentals an additional insured.

Scottsdale offers a second explanation why this provision
is insufficient to constitute a contractual obligation to add
United Rentals as additional insured: that it is limited to
requiring Gomes to insure itself against damage to United

11

Rentals' equipment.  Scottsdale argues that nothing in the Gomes-United Rentals contract requires Gomes to extend its liability coverage to United Rentals as an additional insured. Once again, this is a strained reading of the contract.  United Rentals acknowledges that its primary concern in drafting this provision was to protect against damage to its equipment.  But the provision is not so narrowly limited.  While this provision requires Gomes to cover insurance "for the full replacement cost of the Equipment," which might be seen as so constrained, it also requires coverage "to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment." The word "any" establishes that this requires insurance against a broad category of risks, not merely damage to the equipment.  Moreover, the phrase "arising from" under Massachusetts law, "must be read expansively." *Bagley* v. *Monticello Ins. Co.*, 720 N.E.2d 813, 816 (Mass. 1999).  It is most akin to "but for causation." *Id.*  By referring to any liability factually caused by the use of the Equipment, the contract requires Gomes to insure against more than simply physical damage to equipment; holding otherwise would write out of the contract a full clause and give effect only to the discussion of equipment replacement costs.  This provision required coverage broad enough to satisfy the requirements of the Scottsdale additional insured endorsement.

The relevant case law provides further support for United Rentals in this matter.  Scottsdale urges that this case is controlled by *RCS Group, Inc.* v. *Lamonica Const. Co.*, 916 N.E.2d 381 (Mass. App. Ct. 2009).  In that case, a subcontractor agreed to maintain such contractor "as will protect it and [the general contractor]" from specified claims.  At issue was whether the subcontractor could discharge that duty by purchasing sufficient insurance for itself or was obligated to name the general contractor as an additional insured; the court ruled that either was permissible under the contract.  Scottsdale suggests that this shows that the Gomes-United Rentals contract was merely a contract requiring Gomes to insure itself, not to add United Rentals as an additional insured.  But *Lamonica* does not stand for that proposition.  First, the contractual language was different.  The court in *Lamonica* emphasized the meaning of the word "protect," which does not appear in the Gomes-United Rentals contract, and held that either alternative would sufficiently protect the general contractor.  That argument is inapplicable to this contract; the functional question of whether a party was protected is not at issue here.  Second, the *Lamonica* contract does not appear to have mentioned additional insureds at all, whereas this contract does.  The *Lamonica* court found the language in that case ambiguous, but that type of ambiguity is not present when the next sentence clarifies that

the anticipated method of providing coverage is through making United Rentals an additional insured.

At least two other courts that have interpreted identical contractual provisions have reached the same conclusion as I do here.[3]  In *Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *United Rentals*, No. 04 CH 03276 (Cir. Ct. Cook Cnty., Ill. Oct. 25, 2005), *rev'd on other grounds*, No. 1-06-2129 (App. Ct. Ill. Feb. 29, 2008), the trial court interpreted the same provision in a United Rentals contract, there made with the Hyatt Corporation. It held that the contract was unambiguous and that "Hyatt had an obligation to procure liability insurance coverage covering United Rentals for its own negligence and strict liability arising out of the use of the Skyjack" and "Hyatt had an obligation to name United Rentals as an additional insured." Accordingly, the court also found that Hyatt's insurer had a duty to defend United Rentals.

Likewise, in *Frechette* v. *United Rentals, Inc*., No. WWMCV096000853S, 2011 WL 4583764, at *2 (Conn. Super. Ct. Jan. 25, 2011), a counterclaim defendant moved to strike two counts of the counterclaim on the basis that "although the plain

---

[3] United Rentals also points to *United Rentals, Inc*. v. *Mid-Continent Cas. Co*., No. 11-80955-CIV, 2013 WL 1296313, (S.D. Fla. Mar. 26, 2013), but the *Mid-Continental* court faced sufficiently different legal questions that it provides little guidance in this case.

language of the contract might require insurance coverage for the replacement cost of the equipment, it does not require liability insurance, nor does it require United Rental to be covered."  The judge, emphasizing the language related to "any damage or liability arising from" and "naming United as loss payee and additional insured," ruled for United Rentals, rejecting the very argument Scottsdale now puts forward.  While these opinions are, of course, not binding on this court, each involved precisely the same provision of a standard rental contract.  I find them instructive in supporting the conclusion, already clear from the contract, that Gomes had an obligation to provide coverage for United Rentals as an additional insured.[4]

### 4.  United Rentals' Liability Is for Injury Caused by the Acts of Gomes

The Scottsdale policy only covers United Rentals as an additional insured "with respect to liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" the acts or omissions of Gomes or its agents. The parties dispute the meaning of this provision.  Scottsdale argues that United Rentals is only

---

[4] United Rentals also contends that Scottsdale is estopped from denying coverage because certain Scottsdale employees allegedly assured it that it was an additional insured.  I need not address that question, which may involve questions of fact, because the insurance contract itself resolves the issue favorably to United Rentals.

covered where the liability is caused by the acts of Gomes – in
other words, for claims of vicarious liability.  It cites
*Schafer* v. *Paragano Custom Bldg., Inc.*, No. A-2512-08T3, 2010 WL
624108, at *3 (N.J. Super. Ct. App. Div. Feb. 24, 2010) (per
curiam) in support of this position (near-identical language
"provides coverage for a claim asserted against Paragano for
vicarious liability; it does not provide coverage for a claim
against Paragano for its own direct negligence").  United
Rentals, conversely, argues that it is covered where the injury
or damage was caused by the acts of Gomes.  It has its own,
longer list of cases in support.  *See, e.g., First Mercury Ins.
Co.* v. *Shawmut Woodworking & Supply, Inc.*, 48 F. Supp. 3d 158,
173 (D. Conn. 2014) (describing history of provision, lack of
clear language related to vicarious liability, and tension of
phrase "in whole or in part' with interpretation limited to
vicarious liability); *Am. Empire Surplus Lines Ins. Co.* v. *Crum
& Forster Specialty Ins. Co.*, No. CIV. H-06-0004, 2006 WL
1441854, at *7 (S.D. Tex. May 23, 2006) (parties were "free to
draft an endorsement that specifically limited additional
insured coverage to situations which the additional insured was
liable on only a vicarious liability theory," but did not do
so).

I need not resolve this interpretive dispute, however,
because the underlying claims against United Rentals would

16

satisfy either test.[5]   Clearly, the Ayottes aim to hold United

Rentals accountable for *injuries* caused by the acts of Gomes; no

one disputes that Gomes' operation of the lift caused Ayotte's

injury.   But the Ayottes have also pled a vicarious liability

claim against United Rentals.   In the first count of their

amended complaint, for negligent operation and ownership

liability, the Ayottes state that "United Rentals is liable to

Plaintiffs, pursuant to R.I.G.L. § 31-34-4 and other controlling

law, for all injuries Plaintiffs have sustained as a result of

the negligent operation of the lift owned by United Rentals."

This statement comes after three paragraphs describing the

careless operation of the lift by Gomes and its employees.   The

Ayottes therefore appear, on the face of their pleadings, to be

attempting to hold United Rentals vicariously liable for the

negligent operation of the lift by Gomes.

The mention of R.I.G.L. § 31-34-4 emphasizes that these

pleadings indeed sketch a claim of vicarious liability.   That

---

[5] I also decline to find that Scottsdale is judicially estopped
from advancing its interpretation of this clause, as United
Rentals would have it, because it previously took an opposite
position.   Judicial estoppel is a "hazy" doctrine, which
emphasizes the weighing of the equities of a particular case,
but its primary purpose is to prevent parties from "improperly
manipulating the machinery of the judicial system." *Otis* v.
*Arbella Mut. Ins. Co.*, 824 N.E.2d 23, 30 (Mass. 2005).   It is a
matter of discretion whether to apply judicial estoppel and
here, I do not find Scottsdale's change of position to rise to
the level of "endangering the integrity of the judicial
process." *Id.*

statute creates vicarious liability, stating that the owner of a for-hire vehicle "shall be jointly and severally liable with any person operating the vehicle for any damages *caused by the negligence of any person operating the vehicle*" (emphasis added). *See also LaFratta* v. *Rhode Island Pub. Transit Auth.*, 751 A.2d 1281, 1285 (R.I. 2000) (per curiam) (describing statute as creating vicarious liability). Thus, the underlying complaint plainly states at least one claim that is possibly covered by the policy terms; as a consequence, the duty to defend is triggered.

> 5. <u>Regardless Whether It Provided Excess or Primary Coverage, Scottsdale Would Not Be Excused from Defending United Rentals</u>

Scottsdale also denies a duty to defend based on the relationship of its policy covering Gomes with United Rentals' own policies, provided by the ACE American Insurance Company. The Scottsdale blanket additional insured endorsement includes the following terms:

> Any coverage provided hereunder will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract specifies that this insurance be primary. When this insurance is excess, we will have no duty under Coverage A or B to defend the additional insured against any "suit" if any other insurer has a duty to defend the additional insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the additional insured's rights against all those other insurers. [Dkt. No. 49 ¶35].

Scottsdale argues that its coverage was excess, not primary, and that therefore it has no duty to defend nor to cover United Rentals until United Rentals' own coverage has been exhausted.  Much of this argument relates to Scottsdale's duty to indemnify, not its duty to defend, and so remains unripe.  And as concerns the duty to defend, most of the issues raised – whether self-insurance is "valid and collectible insurance," for example, or which of United Rentals' own policies would govern in this case – are immaterial.

    For the duty to defend, the key provision of this endorsement is that Scottsdale will have no duty to defend only if another insurer does have a duty to defend against that suit. Neither of the two relevant insurance policies directly covering United Rentals requires ACE to defend United Rentals.  Whether Scottsdale's policy is primary, excess, or otherwise, it is the only insurer with a potential obligation to defend United Rentals, and so under the terms of the policy, it must "undertake to do so."[6]  At a later stage, it may become necessary

---

[6] United Rentals points to the recent Massachusetts Appeals Court decision of *Preferred Mut. Ins. Co.* v. *Vermont Mut. Ins. Co.*, 32 N.E.3d 336, 343 (Mass. App. Ct. 2015), which held that "other insurance" clauses only establish relationships between insurance policies with regard to the duty to indemnify and not the duty to defend.  However, that case involved clauses that "make no reference to the insurers' defense obligations." *Id.*

to adjudicate how the parties' various policies interact; in determining the duty to defend, the matter is clear that Scottsdale bears that duty.

## C.    *Breach of the Duty to Defend*

Scottsdale did not undertake a defense of United Rentals subject to a reservation of rights. Rather, it has consistently denied United Rentals a defense in the underlying action. Given the existence of a duty to defend in the underlying suit, as established in this memorandum, the failure to provide such a defense constitute breach of contract. Accordingly, United Rentals is entitled to recover the costs of its defense in the underlying suit to date. Additionally, under Massachusetts law, it may also recover the reasonable attorney's fees and expenses it incurred in this declaratory judgment action to establish the

---

The Scottsdale policy, in contrast, explicitly lays out defense obligations.

United Rentals also calls attention to the Hawaii Supreme Court case favorably cited in *Preferred Mutual*, which addresses whether a primary insurer may look to another insurance policy in disclaiming its duty to defend, and finds that it cannot. *Nautilus Ins. Co.* v. *Lexington Ins. Co.*, 321 P.3d 634 (Haw. 2014). The Hawaii court noted the potential for error when one insurer interprets the complex policy of another insurer and a preference for insurers to defend under a reservation of rights while determining coverage obligations and then litigate the recovery of defense costs between themselves. *Id.* at 644-46. This is a broad holding and it is not immediately apparent that the Massachusetts Appeals Court — writing in dicta — meant for it to be adopted in full. Because I hold that under the plain terms of the Scottsdale policy, it was obligated to defend United Rentals, I do not need to reach the issue of whether to apply the rule of *Nautilus* wholesale as Massachusetts law.

duty to defend.  *Rubenstein* v. *Royal Ins. Co. of Am.*, 708 N.E.2d 639, 641 (Mass. 1999), *citing Preferred Mut. Ins. Co.* v. *Gamache,* 686 N.E.2d 989 (Mass. 1997).[7]

## V.  CONCLUSION

For the reasons set forth above, I GRANT IN PART and DENY IN PART the respective motions for summary judgment of Scottsdale [#48] and United Rentals [#50].  I dismiss the request of United Rentals for declaratory judgment with respect to indemnification as insufficiently ripe for resolution.  I declare that Scottsdale owes United Rentals, as an additional insured, a duty to defend in the underlying *Ayotte* action.  I further find Scottsdale in breach of that duty and order it to reimburse United Rentals for the reasonable costs of its defense in both the *Ayotte* action and in this declaratory judgment

---

[7] The Rhode Island Supreme Court has not definitively settled whether Rhode Island also includes the attorney's fees from the declaratory judgment action as damages for a breach of the duty to defend, but a Rhode Island trial court has found that attorney's fees are only to be granted where the insurance company declined to defend in bad faith.  *Furey Roofing and Const. Co., Inc.* v. *Employers Mut. Cas. Co.*, No. KC-2009-0685, 2010 WL 422253 at *7-*8 (R.I. Super. Feb. 1, 2010).  In its choice of law analysis, United Rentals identified this issue as a potential conflict between Massachusetts and Rhode Island law and suggested supplemental briefing on the choice of law issue if it arose.  While I am currently of the opinion that continuing to apply Massachusetts law remains proper — especially in the absence of either a binding Rhode Island Supreme Court decision on the matter or a developed disagreement between the parties as to the applicability of Massachusetts law — this issue may be further developed in connection with steps necessary to bring this matter to judgment.

action.  The parties are directed to submit on or before January

22, 2016 a joint status and scheduling order outlining the

process to be followed to bring this case to final judgment.

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE