UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCOTTSDALE INSURANCE COMPANY, )
                              )
            Plaintiff,        )       CIVIL ACTION NO.
                              )       13-12824-DPW
v.                            )
                              )
UNITED RENTALS                )
(NORTH AMERICA), INC.,        )
                              )
            Defendant.        )

MEMORANDUM AND ORDER
March 30, 2018

## I. BACKGROUND

This is the second phase of an insurance coverage action

arising from a personal injury suit in the Rhode Island courts.

In the first phase, I found that plaintiff Scottsdale Insurance

Company ("Scottsdale") owed a duty to defend to defendant United

Rentals (North America), Inc. ("United Rentals") in an

underlying personal injury action. *Scottsdale Ins. Co*. v.

*United Rentals (N. Am.), Inc*. ("Scottsdale I"), 152 F. Supp. 3d

15 (D. Mass. 2015).  The underlying action has now settled, and

I am called upon to determine whether Scottsdale also owes

United Rentals indemnification.

The basic facts were set forth in my previous Memorandum

and Order:

> In a contract dated June 22, 2007, Gomes Services, Inc.
> ("Gomes") rented an electric boom lift from United Rentals.
> Gomes used that lift at a trade show held at the Rhode

Island Convention Center, where on June 26, 2007 an
accident occurred. Guy Ayotte, the plaintiff in the
underlying action, was struck and injured by the lift,
which was then being operated by Gomes employee Mario
Perez. At that time, Gomes was insured by Scottsdale.
United Rentals had its own insurance policies, two of which
are at issue in this litigation and now asserts that it was
an additional insured on the Scottsdale policy as well. The
relevant features of these contracts and policies will be
described as they arise in the analysis of the legal
questions presented.

After the accident, Ayotte and his wife filed suit in Rhode
Island state court against United Rentals, Gomes, and
others. *Ayotte* ex. rel. *Ayotte* v. *Perez*, C.A. No. 10-2164
(R.I. Super. Ct., amended complaint filed Mar. 11, 2011).
Three counts in the amended complaint assert causes of
action against United Rentals and are relevant here:
Negligent Operation and Ownership Liability (Count I);
Negligent Maintenance of a Dangerous Instrumentality (Count
V), and Negligent Hiring of a Dangerous Instrumentality
(Count VI). At the heart of the claims against United
Rentals is the allegation that the lift should have been
properly equipped with an alarm which warned bystanders of
the lift's approach, but that the lift emitted no audible
sounds at the time.

*Scottsdale I*, 152 F. Supp. 3d at 18.

The underlying *Ayotte* action has settled, and, pursuant to
that settlement, United Rentals paid a sum of money to the
Ayottes.[1]

In my previous Memorandum and Order, I resolved a number of
disputes concerning the relationship between the parties.  These
rulings remain the law of the case.

---

[1] The settlement amount is treated as confidential by the
parties.

First, I found that Massachusetts law governs this dispute.
*Id.*

Second, I determined that Scottsdale's insurance contract with Gomes required United Rentals to be added as an additional insured. *Id.* at 22-23.

Third, I held that Scottsdale owed United Rentals a duty to defend in the underlying action, and that it had failed to do so. *Id.* at 25.

Because a declaration concerning indemnification was not then ripe, however, I did not decide that issue. *Id.* at 19. But the issue is now ripe before me. Both parties now seek a declaratory judgment in their favor on the duty to indemnify, and United Rentals also seeks damages for Scottsdale's breach of its contractual duty to indemnify.

The standard of review remains the same:

> Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where there "is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Cross-motions for summary judgment do not alter this standard, but rather require a determination of whether either party can show an entitlement to judgment as a matter of law based on the undisputed facts. *Adria Int'l Grp., Inc.* v. *Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). The interpretation of an insurance contract is a question of law. *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 439 N.E.2d 234, 237 (1982).

*Id.* at 18.

## II.   MOTION TO STRIKE

United Rentals has moved to strike three elements from Scottsdale's briefing: pages filed beyond the 20-page limit set forth in Local Rule 7.1(b)(4); all references to Scottsdale's internal investigation by representative Eliza Czerwein, which was belatedly disclosed; and the confidential amount of the settlement in the underlying litigation.

In determining whether sanctions are appropriate for untimely disclosures and other discovery violations related to Czerwein's investigation, I am guided by the factors the First Circuit has laid out.  District courts should "weigh the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions," as well as whether the court previously "gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty." *AngioDynamics, Inc*. v. *Biolitec AG*, 780 F.3d 429, 435 (1st Cir.), *cert. denied*, 136 S.Ct. 535 (2015).

After weighing these factors, I conclude no sanction is necessary.  The record shows no pattern of discovery violations by Scottsdale – and as a result, no prior warnings about

sanctions were given.  Nor did these failures create any substantial prejudice to United Rentals.  First, my analysis of the merits of the case does not rely upon, or otherwise make use of, Ms. Czerwein's testimony.  Her investigation is potentially relevant in addressing factual questions about the negligent maintenance of the boom lift but that does not affect my determination as to indemnity coverage on summary judgment. Moreover, Scottsdale points out that this evidence comes from the underlying litigation, to which United Rentals, but not Scottsdale, was a party; thus, United Rentals already had access to this information.  I see no need for sanction in this instance.

I find the other two issues harmless.  First, Scottsdale has already filed a Notice of Scrivener's Error and a corrected memorandum addressing the confidential settlement figure.  This suffices to cure any problem.  Second, while Scottsdale's briefing exceeded the page limit, it was largely repetitive of briefing from the first phase of this litigation and then repeated in Scottsdale's opposition brief; the extra pages did not serve to augment the persuasiveness of Scottsdale's arguments.  While I must warn Scottsdale and its attorneys of the need for greater care in its briefing and closer attention to the Rules of Civil Procedure and the Local Rules of this

District, I impose no sanctions at this juncture and I will deny the motion to strike.

### III. ANALYSIS

#### *A.   The Duty to Indemnify*

Although Scottsdale had a duty to defend United Rentals in the underlying action, "the obligation to indemnify does not ineluctably follow from the duty to defend." *Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc*. v. *Shelby Mut. Ins. Co*., 487 N.E.2d 1371, 1374 (Mass. 1986).  The duty to indemnify is narrower.  "[A]n insurer's obligation to defend is measured by the allegations of the underlying complaint while the duty to indemnify is determined by the facts, which are usually established at trial."  *Travelers Ins. Co*. v. *Waltham Indus. Labs. Corp*., 883 F.2d 1092, 1099 (1st Cir. 1989).  Here, however, there was no trial in the underlying action but rather a settlement.  "This means that the duty to indemnify must be determined in the basis of the settlement and, since this [is] a summary judgment proceeding, the undisputed facts."  *Id.*

Because Scottsdale wrongfully declined to defend United Rentals, even if it did so in good faith, the relevant burden of proof shifts and Scottsdale must prove that the claim was not within its policy's coverage in order to avoid owing indemnification.  *Polaroid Corp*. v. *Travelers Indem. Co*., 610 N.E.2d 912, 922 (Mass. 1993).

This burden shifting brings certain additional consequences
in the context of a settlement.  If some underlying claims are
covered by the policy and others are not covered, the insurer
also bears the burden of allocating the judgment or settlement
between those claims.  *Liquor Liab. Joint Underwriting Ass'n of
Massachusetts* v. *Hermitage Ins. Co*., 644 N.E.2d 964, 969 (Mass.
1995).  If that allocation is "speculative and arbitrary," then
the insurer will be liable for the full amount.  *Id.; see also
Liberty Mut. Ins. Co*. v. *Metro. Life Ins. Co*., 260 F.3d 54, 63
(1st Cir. 2001) ("if the insurer fails to defend the lawsuit, it
is liable for all defense costs and (assuming policy coverage)
the entire resulting judgment or settlement, unless liability
can be allocated among covered and uncovered claims.").

Massachusetts courts have generally looked for unambiguous
allocations of liability, such as a special jury verdict
dividing liability across claims, to meet the burden.  *See,
e.g., Palermo* v. *Fireman's Fund Ins. Co*., 676 N.E.2d 1158, 1163-
64 (Mass. App. Ct. 1997) (suggesting insurer should have
requested judge employ special jury questions) (citing
*Hermitage*, 644 N.E.2d at 969); *Republic Franklin Ins. Co*. v.
*United Educators Reciprocal Risk Retention Grp*., 847 N.E.2d
1139, No. 04-p-1730, 2006 WL 1360019, at *3 (Mass. App. Ct. May
18, 2006) ("Republic settled the *Perry* action without

adjudicating any of its coverage defenses.  Any allocation of
the settlement amount, therefore, would be speculative.").

Accordingly, in this case, Scottsdale bears the burden of
showing that United Rentals' settlement costs were not covered
under the policy and, if it can show that only some claims were
not covered, establishing a reliable allocation of settlement
costs across the claims.

## B.   *Scope of the Additional Insured Coverage*

United Rentals is covered as an additional insured under
the Scottsdale policy provided to Gomes.  That policy provides
additional insured coverage "only with respect to liability for
'bodily injury,' 'property damage' or 'personal and advertising
injury' caused, in whole or in part, by [Gomes'] acts or
omissions; or [t]he acts or omissions of those acting on
[Gomes'] behalf."  This provision can be read in two ways,
depending on what the "caused by" phrase is seen to modify.
Scottsdale argues that coverage is provided only where the
*liability* is caused by Gomes' acts – in other words, only for
vicarious liability.  United Rentals argues that it is the
*injury or damage* that must be caused by Gomes' acts.   This
interpretive issue in insurance contracts is not unknown, as the
many cases each party cites demonstrate; Massachusetts courts,
however, appear not to have addressed it yet.  Consequently, I
apply the ordinary principles of interpreting an insurance

contract, looking to the "the actual language of the policies,

given its plain and ordinary meaning," and resolving any

ambiguities against the insurer. *Valley Forge Ins. Co*. v.

*Field*, 670 F.3d 93, 97 (1st Cir. 2012) (quoting *Brazas Sporting

Arms, Inc*. v. *Am. Empire Surplus Lines Ins. Co*., 220 F.3d 1, 4

(1st Cir. 2000)) (internal quotation marks omitted).

The weight of authority from other jurisdictions examining

substantially identical language supports the interpretation of

United Rentals.  In a particularly thoughtful opinion, Judge

Arterton of the District of Connecticut offered three reasons to

believe that coverage is provided where the acts of the named

insured caused bodily injury. *First Mercury Ins. Co.* v. *Shawmut

Woodworking & Supply, Inc*., 48 F. Supp. 3d 158, 172-73 (D. Conn.

2014).  First, she pointed to alternative contractual provisions

that clearly and expressly limit coverage to cases of vicarious

liability. *Id.*  For example, an additional insured could be

covered only where the additional insured is "*held liable* for

[the named insured's] acts or omissions" or "only to the extent

of liability resulting from occurrences arising out of

*negligence* of the policyholder." *Id.* at 172 (quoting *Ne. Utils.

Serv. Co*. v. *St. Paul Fire & Marine Ins. Co*., No. 3:08–CV–01673

(CSH), 2012 WL 2872810, at *4 (D. Conn. July 12, 2012) and

*Harbor Ins. Co*. v. *Lewis*, 562 F. Supp. 800, 804–05 (E.D. Pa.

1983)) (emphasis in original) (internal quotation marks

omitted).  By comparison, the relevant language here did not directly invoke vicarious liability.

Second, Judge Arterton concluded that the "in whole or in part" phrase is incompatible with an interpretation in which only vicarious liability is covered.  *Id.* at 172-73. "[V]icarious liability is an all or nothing proposition and thus a party could not be vicariously liable 'in part' for [the named insured's] acts."  *Id.* at 173.

Third, she explored the drafting history of this standardized contractual language and persuasively demonstrated that the provision in question was intended to impose limits related to proximate causation, not vicarious liability.  *Id.* at 173.  While this final reason goes beyond the plain language of the contract, it is nevertheless instructive regarding the meaning of the language.

Other courts have focused on the lack of explicit language limiting additional insured coverage to vicarious liability. *See Am. Empire Surplus Lines Ins. Co.* v. *Crum & Forster Specialty Ins. Co.*, No. CIV. H-06-0004, 2006 WL 1441854, at *7 (S.D. Tex. May 23, 2006) ("The words 'derivative' and 'vicarious' are conspicuously absent from the Endorsement.  Crum was free to draft an endorsement that specifically limited additional insured coverage to situations [in] which the additional insured was liable on only a vicarious liability

theory.  However, Crum did not do so."); *Thunder Basin Coal Co.* v. *Zurich Am. Ins. Co.*, 943 F. Supp. 2d 1010, 1014-15 (E.D. Mo. 2013) ("the policy does not contain any specific mention of vicarious liability as a limitation on coverage, and such a restriction could have been written into the policy if the parties had intended to limit coverage in that way."); *WBI Energy Transmission, Inc*. v. *Colony Ins. Co.*, 56 F. Supp. 3d 1194, 1202 (D. Mont. 2014) (contrasting this language with "held liable" language).

In contrast, the leading case cited by Scottsdale offers only a conclusory reading of the relevant clause.  *Schafer* v. *Paragano Custom Bldg., Inc*., No. A-2512-08T3, 2010 WL 624108, at *3 (N.J. Super. Ct. App. Div. Feb. 24, 2010) (per curiam).  The *Schafer* court "perceive[d] no ambiguity" and found it obvious that only liability caused by the acts of the named insured was covered.  *Id.*

The other cases cited by Scottsdale are simply inapposite, concerning different contractual language or different interpretive questions.  For example, in *Merchs. Ins. Co. of N.H.* v. *U.S. Fid. & Guar. Co.*, 143 F.3d 5, 9 (1st Cir. 1998), a case on which Scottsdale relies heavily, the court looked to a different provision (providing additional insured coverage "only with respect to liability arising out of 'your work' for that

insured by or for you") and examines what standard of causation is required by that provision.

I agree with those courts that have found under this contractual language additional insured coverage for all injuries caused by acts of the named insured, not only for vicarious liability. Their holdings best give effect to the clause as a whole. To the degree disagreements among courts are enough to show that "the policy language is susceptible to more than one rational interpretation," *Valley Forge Ins. Co*, 670 F.3d at 97, and therefore must be interpreted in favor of the insured party, I conclude that both United Rentals' independent and vicarious liability is covered by the additional insured endorsement.

The additional insured provision covers United Rentals for the two counts concerning its own negligence: Counts V and VI. *Scottsdale I*, 152 F. Supp. 3d at 24 ("no one disputes that Gomes' operation of the lift caused Ayotte's injury."). Scottsdale cannot meet the burden of allocating the settlement amount in any non-speculative fashion – indeed, to the extent that it tries to do so, it argues that 100 percent of United Rentals' share of settlement should be allocated to those two counts. Consequently, it must indemnify United Rentals.[2]

---

[2] Scottsdale argues that the remaining count, alleging vicarious liability under R.I. Gen. Laws § 31-34-1, would have failed as a

12

## C.    *Excess and Primary Coverage*

Scottsdale argues, in the alternative, that its additional

insured coverage to United Rentals is only excess of United

Rentals' own insurance policies.  Analysis begins with the

relevant policy provisions.  The Scottsdale policy provided to

Gomes (and then to United Rentals as additional insured) states

that "[a]ny coverage provided hereunder will be excess over any

other valid and collectible insurance available to the

additional insured whether primary, excess, contingent or on any

other basis unless a written contract specifically requires that

this insurance be primary."

United Rentals, for its part, has two potentially relevant

insurance policies provided by ACE.  The first, which Scottsdale

deems the "ACE CGL Policy,"[3] has a limit of $2 million per

occurrence, with a $2 million deductible per occurrence.  That

---

matter of law because that statute imposes liability only on
vehicles rented in Rhode Island, whereas this vehicle was rented
in Massachusetts.  This appears to be correct. *Fratus* v.
*Amerco*, 575 A.2d 989, 992 (R.I. 1990) ("We do not believe that §
31-34-4 can be applied extraterritorially to a Massachusetts
bailment."); *see also Lopes* v. *Phillips*, 680 A.2d 65, 70 (R.I.
1996) (reaffirming holding in *Fratus*).  The case law is not
clear, however, regarding whether an unmeritorious claim
nevertheless might have had some settlement value, particularly
on the eve of trial, or whether the entire settlement must be
allocated to the potentially successful claims.  This issue is
immaterial, however, in the posture of this case.
[3] I adopt Scottsdale's naming conventions for the sake of clarity
but do not ascribe any legal significance to this convenient set
of conventions.

policy provides that "[i]f other valid and collectible insurance
is available to the insured," then it is excess over "any other
primary insurance available to you . . . for which you have been
added as an additional insured by attachment of an endorsement"
but is otherwise (for present purposes) primary.

The second, which Scottsdale has titled the "ACE Ultimate
Net Loss Policy," is described as an "Excess Commercial General
Liability Policy." That policy has a limit of $3 million per
occurrence, subject to a $2 million self-insured retention
("SIR") per occurrence. It also has an "other insurance"
clause, which provides that "[i]f other insurance is available
to the insured for a loss we cover under this policy, this
insurance is excess over that other insurance, unless that
insurance is written specifically to apply in excess of the
Limits of Insurance shown in the Declarations."

The Scottsdale policy does not require significant
interpretation. It is excess "unless a written contract
specifically requires that this insurance be primary." There is
no contention that any such contract so requires. Consequently,
the Scottsdale coverage is excess, so long as one of the ACE
policies is "valid and collectible insurance."

Conversely, the ACE Ultimate Net Loss Policy is excess over
other insurance, unless that other insurance is "written
specifically" to apply in excess of the ACE Ultimate Net Loss

Policy. There is no contention that the Scottsdale policy was written specifically to apply in excess of the ACE Ultimate Net Loss Policy. The Net Loss policy is also an excess policy (as clearly stated in its title, "Excess Commercial General Liability Policy").

In arguing that the ACE policies offer primary coverage, Scottsdale relies on *Lexington Ins. Co*. v. *Va. Sur. Co*., 486 F. Supp. 2d 173, 179 (D. Mass. 2007), in which the court found policies with large self-insured retentions to be primary. *Lexington* certainly stands for the proposition that "[a] policy is not rendered 'excess' simply because it sits over a SIR." *Id.* But it is logically unsound to conclude that, therefore, all policies which sit over a SIR are primary, as Scottsdale seems to do in its briefing. The *Lexington* court found the policies there to be primary in part because they were printed on "industry-standard primary CGL forms, rather than on industry-standard excess coverage forms" and stated that "this insurance is primary." *Id*. at 177. The ACE Ultimate Net Loss Policy identifies itself as excess, on a standard excess form. Regardless of whether the SIR renders it excess, the policy itself is unambiguously an excess policy.

As for the ACE CGL policy, on its face, it provides primary coverage. The ACE CGL policy is only excess over other primary coverage, but the Scottsdale policy provides excess coverage.

Consequently, the plain meaning of these provisions requires the ACE CGL policy to remain primary.  *Cf. Am. Family Mut. Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, 463 F. App'x 680, 685 (9th Cir. 2011) (unpublished opinion) (applying Arizona law, distinguishing between other insurance provisions that make a policy excess over "any other insurance" and over "any other primary insurance"); *Certain Underwriters at Lloyd's London* v. *Cent. Mut. Ins. Co.*, 12 N.E.3d 762, 768 (Ill. App. Ct. 2014) (applying Illinois law, distinguishing between policies that are primary but excess over other primary policies and policies that are excess unless a contract specifically requires them to be primary); *Irene Realty Corp.* v. *Travelers Prop. Cas. Co. Am.*, 973 A.2d 1118, 1123 (R.I. 2009) (same as *Lloyd's*, but under Rhode Island law).

United Rentals offers a variety of arguments as to why the ACE CGL policy should not be considered as insurance for these purposes at all.  First, and least persuasively, United Rentals argues that the CGL policy "was not designed to cover URI but to provide coverage for a customer specifically added by endorsement to become an additional insured."  In support of that argument about intent, United Rentals offers deposition testimony, notes that no claim has ever been submitted under the policy, and suggests that having two overlapping policies would make no sense.  But I must interpret insurance contracts by

looking to the "actual language" of the policies; that is where

the material intent of the drafters must be found.

United Rentals also characterizes the structure of the ACE

CGL policy as showing that it is not "valid and collectible

insurance."  According to United Rentals, this policy is a

"fronting policy."  "In a fronting arrangement, an insurer, for

a fee, issues an insurance policy with the intent of passing

most or all of risk back to the policyholder, or to a reinsurer,

or to the policyholder's captive. Insureds commonly use fronting

to retain risks and control reinsurance."  *Ins. Co. of N. Am.* v.

*Pyramid Ins. Co. of Bermuda*, No. 92 Civ. 1816(SS), 1994 WL

88701, at *4 (S.D.N.Y. Mar. 16, 1994) (quoting David M. Katz,

*RIMS to Oppose Limits on Fronting*, National Underwriter:

Property & Casualty/Risk & Benefits Management, Nov. 5, 1990, at

3) (internal quotation marks omitted).  Fronting "is beneficial

and cost effective to a large company . . . because such

arrangement permits the company for all practical purposes to

self-insure losses up to the amount of the deductible without

meeting the formal legal requirements for qualifying as a self-

insurer in jurisdictions where it does business."  *Forest Ins*.,

*Ltd*. v. *Am. Motorists Ins. Co*., No. 89 CIV. 4326 (BN), 1994 WL

97138, at *2 (S.D.N.Y. Mar. 21, 1994).  Under this policy,

United Rentals retains its risk because the limit matches the

deductible: practically, it is for all intents and purposes

self-insured, since it will have to pay out of pocket for all
claims.

Courts are divided as to whether self-insurance qualifies
as "other insurance," although a "clear majority of courts" has
held that it does not.  *Stratford Sch. Dist., S.A.U. Dist. No.
58* v. *Emp'rs Reinsurance Corp*., 162 F.3d 718, 721 (1st Cir.
1998).  A divide also exists as to whether fronting policies
that approximate self-insurance qualify as "other insurance."
*See, e.g., Air Liquide Am. Corp*. v. *Cont'l Cas. Co*., 217 F.3d
1272, 1278-79 (10th Cir. 2000) (under Oklahoma law, fronting
policy is "other collectible insurance"); *State Farm Mut. Auto.
Ins. Co*. v. *Universal Atlas Cement Co*., 406 So. 2d 1184, 1186-87
(Fla. Dist. Ct. App. 1981) ("Self-insurance, even though
administered by someone else . . . is not 'other collectible
insurance.'"); *see also Carns* v. *Smith,* No. 01-972H, 2003 WL
22881538, at *2 n.4 (Ohio Ct. Com. Pl. Nov. 7, 2003) (collecting
cases); *cf*. Mark Flory & Angela Lui Walsh, *Know Thy Self-
Insurance (and Thy Primary and Excess Insurance)*, 36 Tort & Ins.
L.J. 1005, 1018 (2001) ("jurisdictions are split on the question
of whether SIRs constitute 'insurance' for purposes of
construing 'Other Insurance' clauses.").

Massachusetts appears not to have decided whether either
true self-insurance or fronting policies constitute "other
insurance" for these purposes.  That said, the Supreme Judicial

Court has found that self-insurance can be the "primary layer" of insurance over which excess insurance sits. *Boston Gas Co.* v. *Century Indem. Co.*, 910 N.E.2d 290, 294 n.7 (Mass. 2009) ("'Excess ... insurance over a qualified purely self-insured retention of risk would not be considered 'primary;' the self-insurance itself is the 'primary' layer.' The excess policies that Century issued to Boston Gas in this case provided the first layer of excess coverage over Boston Gas's primary layer of self-insurance.") (quoting 1 R. PERSONS & K. BROWNLEE, EXCESS LIABILITY: RIGHTS AND DUTIES OF COMMERCIAL RISK INSUREDS AND INSURERS § 5:3, at 2 (4th ed. 1999)). This implies that self-insurance – particularly when it takes the form of a formalized fronting policy – can be valid and collectible insurance over which an excess policy sits. Thus, the ACE CGL policy is valid and collectible insurance that is only excess over other primary insurance policies, which the Scottsdale policy is not – and therefore the Scottsdale policy is excess over the ACE CGL policy. I therefore conclude that Scottsdale owes United Rentals only excess coverage over the ACE CGL policy.

## IV. CONCLUSION

For the reasons set forth above, I DENY United Rentals' motion to strike and GRANT IN PART and DENY IN PART the respective motions for summary judgment of Scottsdale and United Rentals. I declare that Scottsdale owes United Rentals a duty

to indemnify, but only as a provider of excess coverage above the ACE CGL policy.  To the extent that this gives rise to damages, I GRANT United Rentals' claim for summary judgment on its breach of contract counterclaim.  The parties are directed to submit a joint status memorandum and proposed scheduling order on or before April 20, 2018 proposing a process to be followed to bring this case to final judgment.


/s/ Douglas P. Woodlock_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE